| | |
|---|---|
| CHET WILSON, *on behalf of himself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL GENERAL INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 1:25-cv-719-DAB-JLW |

## [PROPOSED] STIPULATED PROTOCOL
## FOR PRODUCING DOCUMENTS AND ESI

Plaintiff Chet Wilson and Defendant National General Insurance Company, by and through their respective counsel, have jointly stipulated to the terms of this Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol").

### I. Production Format

### A. Purpose

The ESI Protocol shall govern the production of documents and electronically stored information ("ESI") by the parties in the above-captioned litigation. The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party. Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

### B. Paper Records

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

1

(1) PDFs.  All documents shall be scanned to PDF format, at least 8 ½ x 11 inch page size, except for documents requiring different page size.  Each page shall be individually branded with sequential bates numbers.

(2) In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

(3) Objective Coding Fields.  The following objective coding fields should be provided, if applicable:  (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

## C.  Electronically Stored Information

Where practicable and applicable, per the parties agreed upon scope, the parties will produce ESI in PDF format according to the following specifications:

(1)     All PDF formatted documents will be multipage (if applicable), searchable PDF files with 8½ X 11 inch page size, except for documents requiring different resolution or page size. Each page  shall be individually branded with sequential bates numbers.

(2)     Each PDF shall be named per the beginning bates number.

(3)     Each imaged version of an electronic document will be created directly from the original electronic document.

(4)     Color documents (e.g., color photographs or graphical representations in color)

2

shall be produced as black & white, PDF files in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by a court.  The requesting party retains the right to request PDF files in higher resolution or larger page sizes or in color if necessary to render the image legible or understandable.

(5)     Full extracted text will be provided  within the searchable PDF files.  Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted PDF file will be OCR'd

(6)     There will be two Load files accompanying all productions.  One will be the Image load file and the other will be the Metadata load file.

(i)     **Image Load File.**

- An image load file shall be provided in standard Opticon format with a .opt extension. The name of the image load file shall mirror the name of the delivery volume (e.g., ABC00l.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.)

- The load file shall contain one row per PDF file.

- Every PDF file in the delivery volume shall be contained in the image load file.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.). A separate volume shall be created for each piece of media delivered.

- Emails will be produced with the CC and BCC line displayed in the image.

(ii)    **Metadata Load File.**  The following metadata fields associated with each electronic document will be produced.

3

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| Duplicate Custodian (if globally deduplicated) | Name of duplicate custodian(s) of email(s) or file(s) produced | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | x | |
| AttachCount | Number of attachments to an email | x | |
| AttachName | Name of each individual attachment | x | |
| ParentBates | Begin Bates number for the parent email of a family (will not be populated for documents that are not part of a family) | x | |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |

4

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x |
| Date Last modified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | |
| File Path | File path storage location of the document or email if the source application allows for the creation of folders | x | x |
| Native Link (if natives are exchanged) | Relative path to any files produced in native format | x | x |
| | | | |
| Confidentiality Designation (for natively produced documents only, if required) | Confidentiality Designation for natively produced documents | x | x |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Hash Value | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| FileExtension | File extension of native file | x | x |

(7) The parties will produce the following ESI types in native file format:

- Excel spreadsheets

- Audio/video files, including call recordings, if applicable

- PowerPoint Presentations

(8) Any document produced in native format will be produced according to the following specifications:

(a) A unique document number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "C00000001_HighlyConfidential--Memo_to_Client_re_ESI.doc."

(b) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a document control number.

(c) Any file produced in native format need not be imaged. Instead, a single page placeholder PDF image shall be provided that indicates the file was produced in native format and contains the bates number of the corresponding file.

6

### D. Redacted Files

Extracted text will ***not*** be provided for electronic documents that have been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

### E. Data Load Files/Cross-Reference Files

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats. Either standard Concordance (DAT) or comma delimited (CSV). All image data should be delivered with a corresponding image load file as a standard Opticon (OPT). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

### F. Deduping Documents and Most Inclusive Email Productions

The parties may dedupe globally (i.e., across all custodians). This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Other_Custodians" or "Duplicate Custodians" field. The parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents. De-duplication shall not break apart families.

Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. For the avoidance of doubt, only

7

email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced. To the extent that an e-mail thread contains privileged communications, such communications can be redacted.

## II. Privilege

The parties agree to abide by Rule 26(b)(5) of the Federal Rules of Civil Procedure with respect to documents fully withheld from production on the basis of a privilege or other protection, unless otherwise agreed to or excepted by this ESI Protocol. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log shall be generated using available metadata, including author/recipient or to/from/cc/bcc names; subject matter or title; and date created. However, metadata that reveals information that is privileged and/or protected shall be redacted from the log. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Unless otherwise agreed to by the parties, privilege logs shall be produced 60 days after the substantial completion of document productions. To the extent a party produces documents after the deadline for substantial completion, and withholds from such production any documents on the basis of privilege, that party shall provide a supplemental privilege log within 30 days of the production. A document initially included on a privilege log may be produced after the close of fact discovery, either by agreement or when the basis for the privilege asserted has been successfully challenged by another party.

Redactions need not be logged so long as the basis for the redaction is evident from the

unredacted portions of the redacted document being produced. A receiving party may request that the basis for a redaction be provided, whereupon the producing party shall supply information sufficient to evaluate the privilege asserted. Such information shall be provided within fourteen (14) days of the request, or on the deadline for producing privilege logs under this ESI Protocol, whichever is later.

With respect to privileged or work-product information involving outside litigation counsel in this action and generated after the filing of the complaint or (if applicable) after the date of receipt of a pre-litigation notice of tort claims in connection with this matter (whichever is earlier), the parties are not required to include any such information in privilege logs. In addition, documents not responsive to the requesting party's substantive document requests need not be included on a privilege log.

Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Rule 26(b)(3)(A) and (B) of the Federal Rules of Civil Procedure.

Pursuant to Rule 502(d) and (e) of the Federal Rules of Evidence, the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of a privileged or work-product-protected document in this case as part of a production is not itself a waiver. Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.  Moreover, nothing in this ESI Protocol shall be interpreted to require disclosure of information subject to privacy protections as set forth in any applicable data protection or privacy law or regulation, including information that may need to be produced from outside the United States and/or may be subject to foreign laws.

### III. Scope of Discovery

The parties agree to meet and confer in an attempt to reach an agreement on the scope of relevant and proportional discovery within the meaning of Rule 26(b)(1).

Dated: March 25, 2026

/s/ *Ryan Duffy*
Ryan Duffy
The Law Office of Ryan P. Duffy, PLLC
1213 W. Morehead Street
Suite 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Subject to Notice of Special Appearance*

Counsel for Plaintiff

/s/ *Stephanie L. Turner*
Stephanie L. Turner (SBN 56995)
Winston & Strawn LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7720
sturner@winston.com

Angela A. Smedley
(*pro hac vice forthcoming*)
Winston & Strawn LLP
300 N. La Salle Dr., Suite 4400
Chicago, IL 60654
Telephone: (312) 558-9889
asmedley@winston.com

Counsel for Defendant